**FILED**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

SEP 29 2015

JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

NO. 4:15-CR-60-UA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL |
| v. | ) | INFORMATION |
| | ) | |
| JAIME LEONARD SMITH | ) | |

The United States Attorney charges that:

## INTRODUCTION

1. CCMT, Inc., doing business as Crystal Coast Medical Transport, was a corporation organized and existing under the laws of the State of North Carolina.

2. CCMT was authorized by the Medicare, Medicaid, and TRICARE federal health care benefit programs to receive payment for the provision of non-emergent ambulance transportation services to beneficiaries living in the Eastern District of North Carolina. CCMT operated primarily in the Carteret and Craven County areas within this District.

3. JAIME LEONARD SMITH, defendant herein, was the President of CCMT. As president, SMITH was responsible for, among other things, acquiring and retaining appropriate documentation in support of claims billed to the Medicare, Medicaid, and TRICARE programs

(hereinafter the "Health Care Programs"). SMITH was also responsible for ensuring that CCMT only billed the Health Care Programs for medically necessary services that were supported by required documentation.

4. The Health Care Programs imposed certain documentation requirements upon providers of nonemergency ambulance services to ensure that said programs only paid for services that were medically required. Specifically, with respect to the routine and repetitive nonemergency transportation of dialysis patients, the Health Care Programs required providers to obtain from a physician a signed Physician's Certification Statement (PCS) prior to providing services to the beneficiary. The Health Care Programs did not authorize payment for such nonemergency ambulance services that were provided without a PCS. Once obtained by a provider, a PCS form covered nonemergency ambulance services rendered by the provider for a period of 60 days, after which time the provider was required to obtain a new PCS.

5. Although the PCS form was required for a provider to receive payment for a nonemergency transport of a dialysis patient, the form did not itself guarantee entitlement to payment from the Health Care Programs for the service. In spite of a PCS form, the Health Care Programs were not obligated to make payment for nonemergency ambulance services unless all other forms of

transportation (such as a private vehicle, wheelchair van, bus, or taxi) were medically contraindicated. In other words, if a patient's condition permitted safe transportation by means other than ambulance, then the Health Care Programs were not required to reimburse the provider for the service, even when the provider had a PCS covering the service.

6. Although the Health Care Programs did not authorize payment for nonemergency ambulance services rendered in the absence of a valid PCS, the Health Care Programs did not require providers to submit a copy of the PCS form prior to payment. Instead, the Health Care Programs entrusted providers to obtain the PCS forms before seeking payment, and to only bill the Health Care Programs for nonemergency ambulance transportation services that were medically required.

7. Providers were required to retain on file the PCS forms and other documentation supporting the medical necessity of all nonemergency ambulance transportation services billed to the Health Care Programs.

8. On or about July 30, 2012, a qui tam relator filed an action alleging that CCMT had engaged in fraudulent billing against health care benefit programs. The relator alleged that CCMT billed the programs for nonemergency ambulance transportation of dialysis patients, even though the patients who were transported could walk.

9. Based upon the qui tam complaint, between August and September of 2012, the United States Department of Health and Human Services, Office of the Inspector General (HHS-OIG), opened a civil and criminal investigation of CCMT, its owners, and operators.

10. Between September of 2012 and August of 2013, federal agents conducted surveillance and other investigative activities concerning CCMT's operations and billings to the Health Care Programs. During this time period, CCMT billed the Health Care Programs for nonemergency ambulance transports of patients that agents witnessed walk and ride in wheelchairs.

11. On August 27, 2013, federal agents interviewed various emergency medical technicians (EMTs) employed by CCMT. Agents confronted the witnesses regarding the fact that certain patients could walk. The EMTs indicated that management at CCMT had obtained a PCS for the patients. The EMTs indicated that they relied upon the existence of a PCS for the medical necessity of the transports. After the EMTs met with federal agents, they informed management at CCMT of the content of their interviews.

12. Under Title 31, United States Code, Section 3733, the United States Attorney General, or his delegate, may issue in writing and caused to be served upon a person a "civil investigative demand." Once served, a civil investigative demand requires the recipient to, among other things, produce to the Attorney General or his delegate

any requested documentary material for inspection and copying. Pursuant to Title 31, United States Code, Section 3733(f), documentary material produced in response to a civil investigative demand shall be made under a sworn certificate stating that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available.

13. On October 17, 2013, the United State Attorney's Office for the Eastern District of North Carolina (USAO-EDNC) issued Civil Investigative Demand number CID-13-D-01 (the "CID") upon CCMT, to the attention of JAIME LEONARD SMITH as the owner. Item (1) of the CID required CCMT to produce "Any and all Physician Certification Statements on which you relied to provide ambulance transport to any beneficiary of a government healthcare program, including but not limited to Medicare, Medicaid, or TRICARE for the time period January 1, 2011 [to] the present."

14. On or about November 7, 2013, JAIME LEONARD SMITH, executed a Declaration of Compliance in response to the Civil Investigative Demand. The Declaration of Compliance stated, among other things, "I have responsibility for producing the documentary material required by the Civil Investigative Demand No. CID-13-D-01. I hereby certify that all of the documentary material required by the Civil Investigative Demand and in the possession, custody, or control

Case 4:15-cr-00060-BO  Document 1  Filed 09/29/15  Page 5 of 8

of the person to whom the Demand is directed has been produced and made available to the false claims law investigator or custodian identified in the Demand." The Declaration of Compliance further stated, "I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the foregoing is true and correct."

15. In conjunction with the submission of the Declaration of Compliance to the USAO-EDNC, JAIME LEONARD SMITH also supplied a flash drive containing, among other things, hundreds of PCS forms purportedly relied upon by CCMT to support a finding of medical necessity for various ambulance transports billed by CCMT to the Health Care Programs.

16. In fact, as JAIME LEONARD SMITH then and there knew, the flash drive served upon the USAO-EDNC in connection with the November 7, 2013 Declaration of Compliance contained PCS forms that had been altered to include additional markings that were not made by the patients' physicians. In some instances, PCS forms were fabricated to cover dates of service for which no genuine PCS form existed. In other instances, the PCS forms were altered to include additional markings that were not made by the patient's physician. For example, some PCS forms were altered to indicate that the ambulance transport was medically necessary, or to reflect that the patient had additional illnesses or medical conditions justifying the ambulance

transport.

17. In no instance did the physicians authorize JAIME LEONARD SMITH or any other agent of CCMT to fabricate or alter PCS forms for their patients.

### COUNT ONE
Perjury
18 U.S.C. § 1621

18. Introductory paragraphs 1 through 17 are incorporated herein by reference as though fully set forth in this count.

19. On or about November 7, 2013, in the Eastern District of North Carolina, JAIME LEONARD SMITH, did submit a Declaration of Compliance in response to a Civil Investigative Demand which was executed by JAMIE LEONARD SMITH under penalty of perjury under the format of 28 U.S.C. 1746, in which she did willfully and knowingly state a material matter which she did not believe to be true, that is, that "all of the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of the person to whom the Demand is directed has been produced."

(The remainder of the page is blank)

20. In fact, as JAIME LEONARD SMITH then and there knew, SMITH had not supplied any and all Physician Certification Statements on which CCMT had relied to provide ambulance transport. SMITH was aware that many of the PCS forms supplied by her pursuant to the CID had been altered from their original form without permission of the physician.

All in violation of Title 18, United States Code, Section 1621.

THOMAS G. WALKER
United States Attorney

By: WILLIAM M. GILMORE
Assistant United States Attorney
Criminal Division, Economic Crimes